UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GARY L. JACKSON,<br><br>　　　　　　　Defendant. | Case No.  CR06-5060FDB<br><br>DETENTION ORDER |

**INITIAL DETENTION HEARING:** The government initially filed a Motion for Detention (Dkt. #5) requesting detention based on risk of flight, risk of obstruction of justice, and safety of any other person and the community.  The undersigned held an initial detention hearing in this matter on January 31, 2006.  At that initial hearing the court heard from counsel, the Pre-trial Services Officer and two witnesses who appeared on behalf of the defendant.  One of the defense witnesses told the undersigned that he spoke with the defendant about making threatening statements at his place of employment and stated that he told Mr. Jackson that he could not do that.  At the initial hearing, the government alleged that the defendant made threats against his employer which resulted in the defendant being terminated from his employment and the employer filing a police report with the Olympia police.  The government also referenced a prior domestic violence incident in which the defendant allegedly made a threat against his girlfriend.

　　　　After conducting the hearing and considering all the evidence, the undersigned released the defendant on an Appearance Bond subject to special conditions, which included electronic home

monitoring (EHM). Due to the imposition of EHM, the Appearance Bond (Dkt. #9) included a requirement that Pretrial Services coordinate the defendant's release with the U.S. Marshals. Mr. Jackson was scheduled to be released from the Federal Detention Center on February 2, 2006.

The following standard condition was included in the Appearance Bond:

> I must not harass, threaten, intimidate, tamper with, improperly influence, or injure the person or property of witnesses, jurors, informants, victims of crime, judicial officers, or other persons related to the official proceedings before the court, in violation of 18 U.S.C. §§ 1502, 1512, and 1513.

Mr. Jackson signed the Appearance Bond on January 31, 2006.

**BACKGROUND TO SECOND DETENTION HEARING**: On February 6, 2006, AUSA Annette L. Hayes and AUSA Patricia C. Lally filed the Government's Motion to Reopen Defendant's Detention Hearing (Dkt. #15, which was later amended to correct a date, Dkt. #24) pursuant to 18 U.S.C. § 3142(f)(2)(B).

On February 7, 2006 Pre-Trial Services Officer Jennifer R. Bennett presented to U.S. Magistrate Judge Arnold a Petition for Warrant for Defendant Under Pretrial Services Supervision which alleged violation of that portion of the Appearance Bond cited above. Magistrate Judge Arnold authorized the issuance of a summons.

On February 8, 2006 a motion to withdraw as counsel was filed on behalf of Mr. Jackson's then attorney, Colin Fieman. (Dkt. #22).

Magistrate Judge J. Kelley Arnold held a hearing on Friday, February 10, 2006. The Court authorized Colin Fieman to withdraw as attorney for the defendant and Zenon Olbertz was substituted as defense counsel. In addition, the defendant was advised of the violation alleged by Pre-Trial Services. It is this Court's understanding that Mr. Olbertz objected to the re-opening of a detention hearing. It was also at that hearing that the defendant advised Magistrate Judge Arnold that there was another Gary Jackson at the Federal Detention Center. In order to clarify the situation as to who said what, Magistrate Judge Arnold scheduled a detention hearing before the undersigned for Tuesday, February 14, 2006.

At the hearing before the undersigned, held on February 14, 2006, Mr. Olbertz conceded that Magistrate Judge Arnold had concluded that the government did have the right to re-open the detention hearing. With that being the case, this court conducted a detention hearing based on the government's motion to re-open. The undersigned also notes that 18 U.S.C. §3142(f)(2)(B) allows for reopening of a

1  detention hearing based on new information.

2  **DETENTION HEARING OF FEBRUARY 14, 2006:** The undersigned conducted a second detention
3  hearing on February 14, 2006.  The government presented the testimony of Alexander Stasny, a
4  corrections officer at the SeaTac Federal Detention Center.  Mr. Olbertz made a proffer of testimony.

5  Based on the testimony presented to the court and after hearing argument from counsel, the
6  undersigned finds that on February 2, 2006 at approximately 1:47 a.m. the defendant told Officer Stasney
7  that his lawyer "better get him off."  Officer Stasny asked the defendant, "if not?"  The defendant
8  responded "well he has a family."  The defendant went on to make statements to the effect that if he (the
9  attorney) doesn't, he can get body parts sent to his family.  Officer Stasny told the defendant that those
10 were serious accusations.  Officer Stasny followed protocol and memorialized the defendants statements
11 shortly after they were made through a report on the IMS (Inmate Monitoring System).  This report was
12 ultimately reviewed by the special investigation unit.  The information was provided to the AUSA's who in
13 turn advised the Federal Public Defender.

14 The above referenced conversation occurred between the guard and Mr. Jackson while the
15 defendant was in his cell and while he was making eye contact with the guard.  Mr. Jackson was housed in
16 a lock down unit and his one cell mate was also present.

17 There was a Gary Evans Jackson in the detention center on February 2, 2006, but he was housed
18 10 to 15 cells away from the defendant, is a white male in his 60's who wears glasses and has a beard.  The
19 defendant is a black male, age 35, who does not wear glasses and does not have a beard.  There is no
20 doubt that the statements testified to by Officer Stansy were made by this defendant, Gary Lee Jackson.

21 Officer Stansy had the personal opinion that the defendant was talking tough and making empty
22 accusations.  He reached this conclusion based on the defendant's cell mate.  However, he followed
23 protocol and reported the threat.  Officer Stansy had little prior contact with the defendant, did not know
24 the nature or type of federal charges filed against the defendant, and had no knowledge about any prior
25 criminal history or allegations of violence.

26 Following the initial hearing before Magistrate Judge J. Kelley Arnold, the defendant was detained
27 pending the February 14th hearing.  The defendant saw Officer Stansy at the Federal Detention Center on
28 February 11, 2006.  The defendant told Officer Stansy "because of you I am here and I will see you

Tuesday in court." At that time the defendant also told the Officer that he was referring to a movie and that he did not mean to say it like that.

By way of proffer through Mr. Olbertz, Mr. Fieman would have testified that he received a voice message, made after the February 2, 2006 1:47 a.m. conversation, from Mr. Jackson thanking Mr. Fieman for getting him released to electronic home monitoring. In addition, Mr. Fieman never felt personally threatened or intimidated by Mr. Jackson nor did Mr. Jackson ever threaten Mr. Fieman in person.

**CONCLUSIONS:** This Court finds that Gary Lee Jackson threatened his attorney, Colin Fieman, on February 2, 2006 through the statements he made to Officer Stansy. This threat violated a condition of his Appearance Bond as Colin Fieman is clearly a "person related to the official proceedings before the Court."

This court further finds that the defendant intentionally mislead U.S. Magistrate Judge J. Kelley Arnold when he suggested that there was another Gary Jackson housed at the Federal Detention Center and suggested that the statements may have been made by him. That was not the position taken at the hearing on February 14th and the statements were clearly and unequivocally made by the defendant, Gary Lee Jackson.

At Mr. Jackson's first detention hearing, two of his prior co-workers appeared on his behalf. One of the co-workers advised the court that Mr. Jackson had made threats against his then employer and the co-worker told him he could not say things like that. Yet, only two days following the first detention hearing the defendant made a clear threat against his attorney. The information before the court shows that the defendant has a history of making threats. The federal charge pending against Mr. Jackson is False Communication Regarding a Tainted Consumer Product. This charge is based on false statements allegedly made by the defendant which suggested "that arsenic was being placed inside Pepsi cans by employees of Crown, Cork and Seal, Inc." (See Indictment, Dkt. #11). Crown, Cork and Seal was Mr. Jackson's prior employer.

This Court finds that the community would not be safe if the defendant was not detained pending resolution of the underlying charge. He intentionally mislead the court, he threatened his attorney who did an excellent job representing him at the first detention hearing, he had been previously warned about making threatening comments and he faces a federal charge based on statements he allegedly made. The

only way the court can be certain that the defendant will do no harm is to have him detained.  The court therefore finds that no condition or combination of conditions which defendant can meet will reasonably assure the safety of any other person and the community.

**ORDER OF DETENTION**

The defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded reasonable opportunity for private consultation with counsel.  The defendant shall on order of a court of the United States or on request of an attorney for the Government, be delivered to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 15th day of February, 2006.

    /s/ Karen L. Strombom
Karen L. Strombom
U.S. Magistrate Judge